CARLTON, et al. *versus* KING.

In a trial of the right of property between a claimant and a plaintiff in execution, it does not devolve upon the latter to produce the judgment on which the execution issued—and the production of the executions is sufficient between the parties contesting.

In error from Bibb Circuit Court.

Sundry executions against Thomas Carlton, in favor of the defendant in error, being levied on certain property, the same was claimed, under the statute, by the plaintiffs. It was assigned for error in this Court, among other matters noticed in the opinion, that the Court below admitted the executions under which the property was seised, to go to the jury, without proof of the judgments.

*Gordon*, for Plaintiff—*Clarke*, contra.

TAYLOR, J.—The assignment of error in this case, relates entirely to the matters stated in the bill of exceptions.

The first exception states, that certain executions were offered as evidence by the plaintiff, which were objected to by the defendants because the judgments on which those executions issued were not produced, or proved.

This case originated in a claim of right, made in conformity with the statute, by the Carlton's, to certain property, which had been levied on by a constable in virtue of various executions, which he held in favor of Edmund King, against Thomas Carlton, their father, issued by a Justice of the Peace. The right to the property was tried before the magistrate who issued the executions, and it was found by the verdict of the jury to be in the defendant to the executions; from the judgment rendered upon that verdict, the claimants appealed to the Circuit Court, and on the trial there, the opinions were given which are now to be revised.

Many authorities have been cited by the counsel for the plaintiffs in error, to show, that in an action instituted by a stranger to an execution against a Sheriff, and he justifies under the execution, that he must produce a copy of the judgment, as well as the execution on the trial. This rule has been so long recognised in England, and so often in the different States of this Union, that we should not feel disposed to disturb it in a case in which it was applicable; indeed, this Court, in the case of the *Tombeckbee Bank* against *Godbolt*, has clearly recognised it. But

we are now to determine whether that rule is to be extended further than it has already been ; and before we do this, we should look into the principle upon which it is founded. And here we are almost immediately at fault. In the cases decided in the Courts of our sister States, in which it is recognised, no other reason is given for it, but that it is a uniform rule of law.[a] And why it is that the execution itself affords sufficient justification, when the defendant to it brings the suit against the sheriff, and does not, when a third person is the plaintiff, it is difficult to determine.

In *Buller's Nisi Prius*, 234, we find the following paragraph : "In an action of trespass against a bailiff, for taking goods in execution, if it be brought by the party against whom the writ issued, it is sufficient for the officer to give in evidence the writ of *fieri facias*, without shewing a copy of the judgment : but if the plaintiff be not the party against whom the writ issued, but claims the goods by a prior execution, (or sale,) that was fraudulent, then the officer must produce, not only the writ, but a copy of the judgment : for in the first case, by proving that he took the goods in obedience to a writ issued against the plaintiff, he has proved himself guilty of no trespass ; but in the other case, they are not the goods of the party against whom the writ issued, and therefore the officer is not justified by the writ in taking them, unless he can bring the case within 13 *Eliz.*, for which purpose it is necessary to shew a judgment." But in what way the officer, by producing the judgment, brings himself within the statute referred to, is not mentioned. The case in 1st *Raymond*, 733, which is often referred to, and

appears to be a leading one, contains no reasoning, but merely lays down the distinction, as maintained by the subsequent authorities. The Sheriff acts under the execution ; that is his authority ; if by virtue of it, he levies on the defendant's property, he would suppose he ought to be protected; but if he levies on the property of a third person, he is liable to damages, no matter how formal, regular and valid the judgment may be.

But with respect to the rule of law, when a case of the kind occurs, *ita scripta est* would govern my decision. No case like the present, however, has been produced, to which the rule has been extended. No Sheriff, or other officer, justifies here; it is a simple contest between the plaintiff and defendant, with regard to the ownership of property. I am not ready with the counsel of the defendant in error to say, that if the judgment against the original defendant were void on its face, that the claimant could take no advantage of it; but I am ready to say, that it does not devolve upon the plaintiff in the execution, to show that the judgment is valid; but upon the production of the execution, a valid judgment should be presumed until the contrary appears.

There was, therefore, no error in admitting the executions as evidence, without proof of the judgments.

The next exception to the opinion of the Court is, a refusal to instruct the jury, as was asked by the claimant's counsel ; and to this there are two branches.

1st. That although they should believe the deed marked A, (from claimant's father to them, under which they claimed,) was executed, as it was proved to be, on a consideration, not deemed valuable in law,

yet a good consideration would support and sustain it, against the creditor who afterwards contracted with the person making the deed, and who knew it had been made before he gave credit to the person who had executed it.

2nd. That a man not in debt may give property absolutely, or in trust, for the benefit of his children, and that the conveyance will be supported against a subsequent creditor, with notice of it.

There is nothing in the record to show, that the last branch of the instruction asked, was at all relevant to the case. It may have been altogether abstract and irrelevant, and the Judge, in the opinion, as given in the record, declares that he refused so to instruct the jury, because such instruction would have been entirely inapplicable to the case.

As to the first branch of this exception, it appears that the deed purports to be one of bargain and sale, from the father to the children, and the consideration acknowledged in it to have been received by the father, was $1500. This, it is admitted, was never paid. Without attempting to investigate the doctrine relating to the necessity of stating the true consideration in the deed, where one is stated at all, in the decisions on which there is probably some contrariety, it is sufficient to say, an abstract instruction could not have been legally given in the terms asked by claimant's counsel. According to the instruction asked, a conveyance for a good consideration, that is in consideration of blood, would be valid against a person who had notice of it, and became a subsequent creditor, although he knew also that it was made with the avowed intention of defeating creditors. It is impossible for us to say, but that evi-

dence to that effect was given on the trial; the same witnessed who proved the knowledge of the plaintiff that the deed had been executed, may also have established the actual fraud of the whole transaction. And surely, it will not be contended that a conveyance for good consideration, made with the intent to cheat creditors, is good against any person, whether he be a previous or subsequent creditor, or whether he have notice of the conveyance or not. There was no error in refusing the instructions asked.

The last point raised by the bill of exceptions is as follows:

The claimants, by their counsel, asked the Court to charge the jury, that the Justices' executions not having been proved by the Justice, or any other person, there was no sufficient evidence that they were genuine, or that they were ever issued by a person legally authorised.

The Judge refused to give this charge, assigning as his reason, that the objection was made too late.

It is obvious, from the record, that the executions had been read to the jury without any objection, except the one which was first overruled, that the judgment should first be proved, the whole evidence then followed, and the argument was closed, if an argument was made, before the exclusion of the executions was asked for. A slip of the counsel in not proving that the Justice issued them, if that was necessary, should not have been permitted to be taken advantage of in this way. The witnesses by whom the proof could have been made, might have been discharged, and, if the objection had availed, doubtless it would have been urged that additional evidence should not have been received, even had it

been at hand. The claimants had permitted the evidence to be introduced without objection; it was calculated to secure the justice of the case, and without it, great injury would have resulted to the plaintiff. Under the circumstances, it would have been improper for the Court to have wrested it from the jury.

There was no error in this opinion of the Court. The judgment is affirmed.